**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| EMANUELA E. NEGRESCU, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 1:20-cv-10886-RWZ |
| TRUSTEES OF TUFTS COLLEGE, | ) ) ) | |
| *Defendant.* | ) ) | |

# PLAINTIFF'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

This action arises from the plaintiff, Emanuela E. Negrescu's ("Plaintiff" or "Ms. Negrescu") enrollment at the Tufts University School of Dental Medicine, which is a division of the Trustees of Tufts College. Defendant engaged in a pattern and practice of disability discrimination against Ms. Negrescu, who suffers from generalized anxiety disorder with verbal auditory hallucinations, a psychotic disorder, and a learning disability, while she sought to complete her studies. Upon Ms. Negrescu engaging in protected conduct, including requests for accommodations and her complaints to the Office for Civil Rights, Defendant repeatedly retaliated against Plaintiff by interfering with her attempts to complete course work and/or satisfy her graduation requirements. Defendant also breached an implied or express contract and covenant of good faith and fair dealing.

Ms. Negrescu has suffered substantial monetary damage and reputational harm on account of Defendant's unlawful practices, and she seeks to recover compensatory damages, punitive damages, attorneys' fees, costs, and non-monetary relief.

**PARTIES**

1. Ms. Negrescu is an individual with a principal residence located in Pepper Pike, Ohio. At all times relevant hereto, Ms. Negrescu attended Tufts University School of Dental Medicine in Boston, Suffolk County, Massachusetts.

2. Plaintiff attended the Tufts University School of Dental Medicine, which is formally known as Defendant, Trustees of Tufts College, and is a private institution of higher education (collectively, "Tufts Dental School" or "Defendant").

3. Trustees of Tufts College has a principal place of business in Middlesex County, Massachusetts, and Tufts University School of Dental Medicine is located at 1 Kneeland Street, Boston, Suffolk County, Massachusetts.

**FACTS**

4. Ms. Negrescu, who was born in Moldova and whose first language is Romanian, suffers from generalized anxiety disorder, learning disability(ies), and a psychotic disorder. These disabilities cause her to experience verbal auditory hallucinations, constant panic attacks, severe anxiety, and insomnia.

5. Ms. Negrescu is prescribed medications to control her disabilities. These medications, which have varied over the years depending on the severity of her symptoms, affect Ms. Negrescu, including, but not limited to, her ability to concentrate, stay awake and focused, and, at times, to speak without slurring.

6. In or around August 2012, Ms. Negrescu enrolled in Tufts Dental School and paid tuition (via student loans) for each year of her attendance.

7. On information and belief, Tufts Dental School receives financial assistance from the federal government.

8. Ms. Negrescu's disabilities affected her major life activities while enrolled at Tufts Dental School, including, but not limited to, her ability to see, perform schoolwork, learn, concentrate, hear, and speak. Notwithstanding her disabilities, Ms. Negrescu met the academic and technical standards requisite for admission and participation in Tufts Dental School's educational program.

9. Tufts Dental School mandates that its students complete certain courses, including rotations, clinical programs, seminars, and workshops. Toward the conclusion of year two and beginning of year three of the curriculum, students must take part in a clinical program designed to provide comprehensive patient care. Upon the successful completion of each year of study, a student is promoted to the next year.

10. The Office of Academic Affairs issues the Minimum Procedural Experiences ("MPEs"), Competency Examinations ("CEs"), and the Point Program system of 1,000 points, which outlines the requirements of the clinical program.

11. Pursuant to an express or implied contract between Tufts Dental School and its students (including Ms. Negrescu), Defendant's students are expected to obtain a large portion of the 1,000-point threshold from MPEs of dental subspecialties (prosthodontics, endodontics, periodontics, operative, etc.), and the remaining portion of points from performing various other types of procedures.

12. Tufts Dental School keeps track of MPEs to ensure each student obtains the necessary 1,000 points required to graduate.

13. In August 2013, Ms. Negrescu elected to re-start her first year of studies at Tufts Dental School, and graduate with the class of 2017.

14. Ms. Negrescu successfully completed her first year at Tufts Dental School and, in August 2014, she started her second year.

15. As set forth herein, Ms. Negrescu engaged in multiple instances of protected conduct with respect to Defendant.

16. In or around November 2014, Ms. Negrescu was diagnosed with a learning disability and prescribed medications to assist her to concentrate in her studies. Tufts Dental School was notified of Ms. Negrescu's learning disability.

17. In or around late February 2015, Ms. Negrescu informed Tuft's Dental School's Associate Dean for Admissions, Robert H. Kasberg, MD, that she suffers from verbal auditory hallucinations and that she was feeling ill. Ms. Negrescu asked Dr. Kasberg whether she could complete part I of her Dental Board exams after her 10-exam block at Tufts Dental School was complete because the pressure from the tests was negatively affecting her health. Dr. Kasberg denied Ms. Negrescu's request for a reasonable accommodation despite allowing her similarly-situated, non-disabled colleagues to do so.

18. In March 2015, Ms. Negrescu's mother presented a note from Ms. Negrescu's physician to Dr. Kasberg as part of a request for medical leave from Tufts Dental School, and also stated that Ms. Negrescu was suffering from anxiety disorder and cognitive trouble, and that she was prescribed medications to cope with her disabilities.

19. Dr. Kasberg denied Ms. Negrescu's request for medical leave to cope with her disabilities despite allowing similarly-situated, non-disabled students to take medical leave. Dr. Kasberg suggested that she withdraw from Tufts Dental School and reapply in the future.

20. Despite knowledge of Ms. Negrescu's disabilities, Dr. Kasberg notified Ms. Negrescu that she would need to reapply to Tufts Dental School given she had only completed part I of her Dental Board exams.

21. In March 2015, Ms. Negrescu traveled home to Ohio to be with her parents and seek medical treatment for her disabilities. Ms. Negrescu continued to experience verbal auditory hallucinations.

22. In or around October 2015, Ms. Negrescu successfully re-took part I of her Dental Board exams and, shortly thereafter, re-applied to Tufts Dental School.

23. In or around August 2016, Ms. Negrescu started her second year at Tufts Dental School, and sought to graduate with the class of 2019.

24. Ms. Negrescu completed her second and third years at Tufts Dental School despite suffering severe issues with her disabilities, including acute auditory verbal hallucinations, generalized anxiety, severe panic attacks, and insomnia.

25. During this time, Ms. Negrescu was prescribed various medications, including anti-psychotics, sleep medication, and medications for panic attacks, anxiety and depression.

26. During Ms. Negrescu's third year of studies, she contacted Tufts Dental School's Assistant Dean for Academic Affairs, Michael Thompson, MD, and requested that she be assigned tutors for two of her classes to assist her with her disabilities. Although Ms. Negrescu's request for accommodation was reasonable, Dr. Thompson denied her request.

27. During Ms. Negrescu's third year of studies, she began to experience severe anxiety with accentuated verbal auditory hallucinations.

28. In May 2018, Ms. Negrescu met with Tufts Dental School's Practice Coordinator, Dr. Alberto Sarmiento. Dr. Sarmiento informed Ms. Negrescu that she was behind in points and that she was being watched by 15 floor monitors. Ms. Negrescu informed Dr. Sarmiento that her doctor was trying to figure out if she had schizophrenia. Ms. Negrescu also informed Dr. Sarmiento that although her medications were helping her, they made her drowsy. Dr. Sarmiento told Ms. Negrescu to see the Tufts Dental School's Director, Student Affairs, Katherine Vosker.

29. On or around May 15, 2018, Ms. Negrescu met with Ms. Vosker. At this time, Ms. Negrescu informed Ms. Vosker of her auditory hallucinations and that her doctor suspected that she may be schizophrenic, and Ms. Negrescu asked to have an accommodation with respect to obtaining a teaching assistant to assist her with Prosthodontics lab.

30. On or around June 7, 2018, in furtherance of Ms. Negrescu's request for a reasonable accommodation, Ms. Vosker acknowledged receiving medical information from Ms. Negrescu documenting her disability(ies).

31. Sometime around June 19, 2018, Tufts Dental School denied Ms. Negrescu's request for a reasonable accommodation.

32. In August 2018, Ms. Negrescu was promoted to her fourth and final year at Tufts Dental School. At that time, Ms. Negrescu expected to graduate in May 2019.

33. On or around November 9, 2018, Ms. Negrescu requested an accommodation, so that she could see patients in clinic during the 4:30pm time slot while she was completing her externship, and in order to assist her in completing her points

requirements. Ms. Negrescu's request was denied, despite the fact that Tufts Dental School allowed similarly-situated, non-disabled students similar requests.

34. On or around January 4, 2019 Ms. Negrescu met with Tufts Dental School's Director of Clinical Progress Committee, Dara Rogers, regarding the number of points Ms. Negrescu needed to graduate. Ms. Negrescu requested to meet with Dr. Rogers on a monthly basis to ensure she was on track to graduate on time.

35. Ms. Negrescu worked tirelessly to obtain the necessary 1,000 points and to complete all MPEs and competencies by August 2019, so that she did not have to enroll in another year of studies at Tufts Dental School, which is incredibly expensive.

36. On or around August 26, 2019 Ms. Negrescu completed all graduate requirements of Tufts Dental School by completing the necessary procedures, MPEs, CEs, and obtaining in excess of 1,000 points.

37. On or around August 26, 2019, "out of the blue" Dr. Kasberg notified Ms. Negrescu that she had performed too many occlusal guard procedures, and requested that she schedule an appointment with Dr. Rogers and, then, with Associate Professor and Chair of the Ethic Committee, Kathryn Ragalis, to discuss this issue.

38. Ms. Negrescu was shocked by Dr. Kasberg's incredibly serious allegation, as she was unaware that there was a policy regarding the number of occlusal guard (dental devices that prevent teeth grinding) procedures that could be performed, as such a policy was not conveyed to the students (D19 class). Ms. Negrescu was aware of similarly-situated, non-disabled students in her class who had performed the same number of occlusal guard procedures as Ms. Negrescu, and who had been awarded points by Tufts Dental School for doing so.

39. Additionally, pursuant to an express or implied contract between Tufts Dental School and its students (including Ms. Negrescu), all of Ms. Negrescu's dental procedures were approved and supervised by faculty after informed consent of all her patients.

40. In or around the end of August 2019, Ms. Negrescu met with Assistant Professor, Sheldon Yunes, MD, at his private office to discuss the allegation lodged against her regarding occlusal guard procedures. Dr. Yunes told Ms. Negrescu that he was unaware of any policy limiting the number of occlusal guard procedures a student could perform.

41. In or around late August 2019, as part of an arbitrary investigation into Ms. Negrescu, Dr. Ruby Ghaffari and Dr. Rogers (employees of the Defendant) questioned students at Tufts Dental School who received dental treatment from Ms. Negrescu. Ms. Negrescu was not provided information regarding this investigation.

42. On or around September 4, 2019, Ms. Negrescu met with Drs. Ghaffari and Rogers. Dr. Rogers began shouting and verbally berating Ms. Negrescu, including calling her a "high liability," and asking her in an insulting manner, why she started a three-unit bridge if she could not finish it. Dr. Ghaffari also falsely informed Ms. Negrescu that there were multiple complaints from patients. Ms. Negrescu was terrified of the conduct of Drs. Ghaffari and Rogers.

43. On or around September 9, 2019 Ms. Negrescu again met with Drs. Rogers and Ghaffari, where she was notified that they were reporting her to Tufts Dental School's Ethics, Professionalism and Citizenship Committee ("EPC"). Ms. Negrescu was in shock.

44. Defendant, by and through Drs. Rogers and Ghaffari, placed Ms. Negrescu on clinical suspension from September 9, 2019 until November 5, 2019, which affected her ability to satisfy graduation requirements, including the ability to take patients off of her roster, thus prolonging the amount of time Ms. Negrescu had to remain paying tuition to Defendant. On information and belief, these actions violated Defendant's own policies and procedures because there was no finding by the EPC, and a non-disabled student who was suspended without an EPC hearing was re-instated.

45. Shortly thereafter, Ms. Negrescu was notified that the EPC was investigating alleged ethical violations by her, and that Ms. Negrescu may be dismissed from Tufts Dental School. Ms. Negrescu was stunned and incredibly upset by this accusation.

46. On or around September 10, 2019 Ms. Negrescu received a letter from EPC outlining the ethical allegations against her. It was clear to Ms. Negrescu that Tufts Dental School, including Dr. Kasberg, was treating her differently than her fellow students because of her disabilities.

47. On or around September 24, 2019 Ms. Negrescu engaged in protected conduct by filing a complaint with the Department of Education's Office of Civil Rights ("OCR") alleging disability discrimination.

48. On or around September 26, 2019 Ms. Negrescu met with the Dean of Tufts Dental School, Nadeem Karimbux, to inform him about her OCR complaint. Dr. Karimbux directed her to speak with Dr. Kasberg.

49. On or around October 14, 2019 Ms. Negrescu's attorney also sent a letter to Defendant describing how (among other things): Defendant violated its own policies

and procedures; Defendant treated Ms. Negrescu disparately relative to non-disabled students; Defendant failed to produce evidence in advance of a hearing to determine whether or not Ms. Negrescu committed ethical violations, thus inhibiting Ms. Negrescu's ability to fully understand the allegations and defend herself against the same; and Ms. Negrescu had filed a complaint against the Defendant with OCR.

50. On or around October 15, 2019 Ms. Negrescu sent an email to Dr. Vosker requesting a reasonable accommodation that her legal counsel be present for her EPC hearing. Defendant denied this request.

51. Although Defendant assured Ms. Negrescu that the EPC hearing was not designed to surprise her in any way, Defendant failed to provide Ms. Negrescu with the requisite specificity (as much specificity as possible) relative to the particular factual events that constituted the violations that she allegedly committed. In fact, when Ms. Negrescu asked for specific information, Defendant moved the date of the hearing twice and eventually changed allegations against Ms. Negrescu.

52. On November 5, 2019, Ms. Negrescu attended the EPC hearing and explained in detail her version of events. As Defendant was aware, Ms. Negrescu had panic attacks and anxiety, and her medication made her drowsy and slurred her speech. Further, English is not Ms. Negrescu's first language. Prior to this hearing, Ms. Negrescu asked for a reasonable accommodation to have legal counsel present because it was difficult to artfully explain her version of events and to respond to the allegations. Defendant denied this request.

53. Shortly thereafter, Dr. Kasberg informed Ms. Negrescu about the EPC's adverse decision, which required her to complete three additional externship cycles. Dr.

Kasberg also told Ms. Negrescu that it would worsen her situation if she appealed the EPC's decision.

54.     After Defendant was aware that Ms. Negrescu filed a second complaint with the OCR, in retaliation, Defendant took points away from Ms. Negrescu that she had earned without even telling Ms. Negrescu until after the OCR intervened.  Further, Defendant punished Ms. Negrescu more harshly than it should have and/or more harshly than other, non-disabled students who behaved in a manner similar to that of Ms. Negrescu.

55.     Per Dr. Kasberg's suggestion, Ms. Negrescu did not appeal the EPC's decision despite disagreeing with the findings.

56.     The EPC decision further affected Ms. Negrescu's ability to satisfy all graduation requirements and caused her further damage.

57.     On or around November 7, 2019, in an effort to comply with the Defendant's own requirements relative to the EPC, Ms. Negrescu contacted Associate Professor, Dr. Cynthia Yered, regarding obtaining an externship.  Ms. Negrescu was seeking to complete the externship requirements in a timely fashion in order to graduate.

58.     In a rather abrasive tone and terse manner, Dr. Yered told Ms. Negrescu that she (Dr. Yered) will be absent for one month, she would be unavailable during that month, and she did not believe there were any available externships.

59.     Tufts Dental School attempted to further retaliate against Ms. Negrescu and intentionally set her up to fail with respect to complying with the requirements established by the EPC for Plaintiff to graduate.

11

60. Ms. Negrescu knew there were available externships because she contacted potential externship sites herself. It was clear that Tufts Dental School was discriminating against her and/or retaliating against her for filing the OCR complaint.

61. On or around November 7, 2019 Dr. Ragalis notified Ms. Negrescu that Tufts Dental School was requiring her to "make up" 225 points to reach the necessary 1,000 points for graduation, despite Ms. Negrescu already completing in excess of 1,000 points.

62. On or around November 8, 2019 Ms. Negrescu—without any help from Tufts Dental School and contrary to Dr. Yered's representation—found available externship opportunities. Ms. Negrescu called a location in Florida and confirmed with one of the doctors that there were two cycles available.

63. On or around November 9, 2019 Ms. Negrescu sent an email to Dean Karimbux, Dr. Kasberg, Dr. Thompson, Dr. Ragalis, and several EPC members about available externship opportunities.

64. Shortly thereafter, Dr. Ragalis sent an email to Ms. Negrescu stating that she was prohibited from contacting externship sites. Notably, Dr. Ragalis failed and/or refused to assist Ms. Negrescu find an externship—which was required in order for her to graduate—hence Ms. Negrescu's urgency.

65. On or around November 14, 2019 Ms. Negrescu met with Dr. Ragalis, who informed Ms. Negrescu again that she was not allowed to contact sites, and must wait for Dr. Yered's return from a leave of absence. This, again, affected Ms. Negrescu's ability to complete the externship requirements in a timely fashion in order to graduate.

66. On December 3, 2019 Dr. Yered emailed Ms. Negrescu to notify her that her requirements were undetermined at this time, and Dr. Ragalis would be in touch with her when a determination has been made.

67. Shortly thereafter, on December 3, Ms. Negrescu sent an email to Dr. Ragalis stating that there were externship spots available and she does not understand why Tufts Dental School, through Dr. Yered, was prohibiting her from seeking an externship.

68. On December 4, 2019 Ms. Negrescu attended a meeting with Dr. Ragalis, where Ms. Negrescu stated to Dr. Ragalis that Dr. Yered informed her that there are no externship spots available. Dr. Ragalis also informed Ms. Negrescu that she will do her best to find a solution with the EPC as soon as possible.

69. In or around mid-December 2019, Ms. Negrescu filed a second OCR complaint. OCR representative, Sandy Lin, notified Tufts Dental School of the complaint, and requested certain documentation related thereto.

70. Ms. Negrescu continued to tirelessly work to find externships in order to complete her studies, however, Tufts Dental School, through Dr. Yered, repeatedly refused to allow her various externships—even when openings existed—and intentionally interfered with and/or delayed Ms. Negrescu's ability to graduate.

71. During the time that Tufts Dental School was intentionally delaying Ms. Negrescu's ability to comply with the EPC directives, Ms. Negrescu unnecessarily paid additional tuition in the amount of approximately $27,000.00.

72. In or around January 2020, Tufts Dental School sent a letter to Ms. Negrescu stating that she no longer qualified for financial aid because she did not

13

complete her studies within six years.  Accordingly, due to Tufts Dental School's refusal to assist Ms. Negrescu complete her studies, she was financially penalized.

73. In or around January 2020, Ms. Negrescu discovered that Tufts Dental School had incorrectly deducted points from her record for procedures that had been approved by professors as part of the Axium Program.

74. In early February 2020, Ms. Negrescu received a new, follow-up ruling from the EPC, stating that Ms. Negrescu must return to clinic to graduate.  The EPC documents did not provide any type of meaningful accounting of the number of points taken away, including, but not limited to, what procedures they were taken away for, the basis for taking away any such points, and/or the patients for which any such points were taken away.  Rather, the ruling made the process of obtaining points more tedious and unclear, which created additional obstacles to Ms. Negrescu's graduation, although she has since graduated.

## COUNTS OF THE COMPLAINT

### -COUNT I-
### DISABILITY DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT, AS AMENDED (INCLUDING APPLICABLE CODES OF FEDERAL REGULATIONS)

75. Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

76. Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (together with applicable code(s) of federal regulations) prohibit(s) discrimination against students with disabilities.

77. Ms. Negrescu has had recognized disabilities during her enrollment at Tufts Dental School.

78. Defendant had direct knowledge of Ms. Negrescu's disabilities.

79. Defendant tolerated, created, maintained, and failed to remedy disability discrimination that had the effect and/or purpose of unreasonably interfering with Ms. Negrescu's school environment.

80. Defendant failed to engage in the interactive process with Ms. Negrescu.

81. Defendant failed to provide reasonable accommodations for Ms. Negrescu.

82. Defendant's actions and treatment of Ms. Negrescu were outrageous, egregious, evil in motive and/or undertaken with reckless indifference to her rights.

83. As a result of the Defendant's actions, Ms. Negrescu has suffered damages.

### -COUNT II-
### RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT, AS AMENDED (INCLUDING APPLICABLE CODES OF FEDERAL REGULATIONS)

84. Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

85. Ms. Negrescu engaged in protected activities when she notified Defendant of her disabilities, requested reasonable accommodations, and filed complaints with the OCR.

86. Defendant engaged in adverse and retaliatory conduct against Ms. Negrescu as a result of her engaging in protected activities.

87. As a result of Defendant's actions as detailed herein, Ms. Negrescu has suffered damages.

## -COUNT III-
## BREACH OF CONTRACT

88. Plaintiff hereby restates and incorporates all paragraphs of this Complaint as if fully stated herein.

89. Ms. Negrescu had a contract or implied contract with Defendant.

90. Ms. Negrescu and Defendant entered into a binding contract wherein, among other things, Defendant made written and oral representations to Ms. Negrescu regarding what was required of her to complete course work and/or graduate.

91. Defendant breached the contract, including, but not limited to, by changing its requirements for Ms. Negrescu to complete course work and/or obtain points, falsely creating policies designed to delay Ms. Negrescu's completion of course work and/or her graduation, taking away points in an arbitrary fashion or contrary to Defendant's own policies, making it difficult for Ms. Negrescu to defend herself at the EPC hearing, and/or extending the amount of time needed for Ms. Negrescu to graduate.

92. By breaching its contract with Ms. Negrescu, Defendant caused Ms. Negrescu damages, including, but not limited to, forcing her to spend additional monies on tuition, room and board, other expenses, and delaying her graduation and/or ability to obtain a job as a dentist and other contractual damages.

93. As a result of Defendant's actions, Ms. Negrescu has suffered damages.

## -COUNT IV-
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

94. Plaintiff hereby restates and incorporates all paragraphs of this Complaint as if fully stated herein.

95. Ms. Negrescu and Defendant had a binding contract which, as with all Massachusetts contracts, contained an implied covenant of good faith and fair dealing between the parties.

96. For reasons stated above, Defendant breached the implied covenant of good faith and fair dealing in the parties' agreement.

97. As a result of Defendant's actions, Ms. Negrescu has suffered damages.

## **PRAYER FOR RELIEF**

Plaintiff, Emanuela E. Negrescu, prays that this Honorable Court award a judgment in her favor and against the Defendant, for the following relief:

1. Compensatory, punitive, emotional distress, reputational, potential loss of income, consequential and/or other applicable damages;

2. Costs and expenses of this action;

3. Attorneys' fees;

4. Prejudgment and post-judgment interest; and

5. Such further relief as the Court deems fair and just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on every claim so triable.

Respectfully submitted,

EMANUELA E. NEGRESCU,

By her attorneys,

Dated:  July 29, 2020                      /s/ Todd J. Bennett                      .
Todd J. Bennett (BBO# 643185)
tbennett@bennettandbelfort.com
Craig D. Levey (BBO# 681531)
clevey@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800