## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EMANUELA E. NEGRESCU, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 1:20-cv-10886-RWZ |
| v. | ) | |
| | ) | |
| TRUSTEES OF TUFTS COLLEGE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## PLAINTIFF EMANUELA E. NEGRESCU'S INITIAL DISCLOSURES

Pursuant to Fed. R. Civ. P. 26 (a)(1) and L.R. 26.1 (b)(1), Plaintiff, Emanuela E. Negrescu ("Ms. Negrescu" or "Plaintiff"), makes the following disclosures based upon currently available information.

### A.  Witness Information

The following individuals are believed to have discoverable information about the claims and/or defenses in this case:

1.  Emanuela E. Negrescu, c/o Counsel.

Ms. Negrescu has knowledge of the allegations in her Complaint, and the events she personally witnessed while attending Tufts University School of Dental Medicine (hereinafter "the University"). More specifically, Ms. Negrescu has knowledge of: her disability(ies) and requests for accommodations; her requests for medical leave; her complaints to the Office of Civil Rights; the interference with her attempts to complete her coursework and delays in graduation; her Ethics, Professionalism and Citizenship Committee (hereinafter "EPC") hearing; her emotional distress and economic damages, and meetings with staff members of the University, including, but not limited to, members of the EPC; Associate Dean for Admissions and Student Affairs – Robert H. Kasberg, Ph.D.; Assistant Professor of Comprehensive Care – Sheldon Yunes, DDS, FAGD; Assistant Dean for Academic Affairs – Michael Thompson, M.A., Ph.D.; the University's School Practice Coordinator – Alberto Sarmiento, DMD; the University's Director of Student Affairs – Katherine Vosker; the University's Director of Student Clinical Integration – Dana Rogers, DMD; Dean and Professor of Periodontology – Nadeem Karimbux, DMD, MMSc; Associate Professor, Practice Coordinator and Chair of the Ethics Committee – Kathryn Ragalis,

D.M.D., M.S.; Assistant Dean for Predoctoral Clinical Affairs and Assistant Professor – Ruby Ghaffari, DMD; and Associate Professor and Director of the Community Service Learning Externship Program in the Department of Public Health and Community Service – Cynthia Yered Mclaughlin, DMD.

2.      Members of the EPC c/o Counsel/the University.

Members of the EPC are expected to have information about Ms. Negrescu's EPC hearing and the consequences stemming therefrom.

3.      Dr. Kasberg c/o Counsel/the University.

Dr. Kasberg is expected to have information about Ms. Negrescu's disability(ies), the EPC hearing, applicable University policies and practices, including, but not limited to, those with respect to occlusal guards and/or bleaching trays, points and patient transfers, educational requirements, and reasonable accommodations, Ms. Negrescu's efforts to secure an externship, and his overall treatment of Ms. Negrescu and other students with disabilities.

4.      Dr. Yunes c/o Counsel/the University.

Dr. Yunes is expected to have information about applicable University policies and procedures (and the lack thereof), including, but not limited to, those with respect to occlusal guards and/or bleaching trays.

5.      Dr. Thompson c/o Counsel/the University.

Dr. Thompson is expected to have information about Ms. Negrescu's meeting(s) with Dr. Ragalis, including those relating to the number of bleaching tray and/or occlusal guard procedures performed by Ms. Negrescu. Dr. Thompson also has knowledge of Ms. Negrescu's requests for accommodations. Specifically, Dr. Thompson is expected to have knowledge of Ms. Negrescu's request for a tutor to assist her with studying for examinations and her request to schedule patients after 4:30 p.m. in order to account for her externship. Dr. Thompson has knowledge of the University's denial of both requests. Dr. Thompson is also expected to have information about other, non-disabled students who were treated disparately compared to disabled students, including, but not limited to, by being permitted to schedule patients on Fridays while also away on externship and/or receive tutors.

6.      Dr. Sarmiento c/o Counsel/the University.

Dr. Sarmiento is expected to have information about Ms. Negrescu's disability(ies) and its/their impact on her ability to perform duties as a student, including, but not limited to, those relating to her participation in clinical programs and her ability to complete her coursework. Dr. Sarmiento also has knowledge of Ms. Negrescu's patient load, University policies, the allegations against Ms. Negrescu and her EPC hearing.

7.     Ms. Vosker c/o Counsel/the University.

Ms. Vosker is expected to have information about Ms. Negrescu's disability(ies), Ms. Negrescu's requests for reasonable accommodations from the University and their denial of the same. Additionally, Ms. Vosker is aware of the impact of Ms. Negrescu's disabilities on her ability to perform duties as a student, including, but not limited to, those relating to her participation in clinical programs and her ability to complete her coursework. Ms. Vosker also has knowledge of Ms. Negrescu's patient load. Additionally, Ms. Negrescu requested help from Ms. Vosker in order to graduate on time.

8.     Dr. Rogers c/o Counsel/the University.

Dr. Rogers is expected to have information about Ms. Negrescu's disability(ies), coursework, accrued points, and competencies. Ms. Rogers has knowledge of Ms. Negrescu's performance (and her colleagues' performance) in clinic. Dr. Rogers and Ms. Negrescu had monthly meetings from approximately, January 2019 through August 2019.  During a meeting between Dr. Rogers, Ms. Negrescu and Dr. Gaffari, Dr. Rogers referred to Ms. Negrescu as a "high liability." Dr. Rogers also has knowledge of the investigation she conducted into the bleaching tray and/or occlusal guard procedures performed by Ms. Negrescu, and the EPC process with respect to Ms. Negrescu. Additionally, Dr. Rogers has information about how other disabled and non-disabled students were treated compared to how Ms. Negrescu was treated, as well as policies of the University.

9.     Dr. Ragalis c/o Counsel/the University.

Dr. Ragalis is the head of the EPC and is expected to have information about Ms. Negrescu's EPC hearing and the consequences stemming therefrom. Dr. Ragalis also has information about Dr. Rogers' investigation, how other disabled and non-disabled students were treated compared to how Ms. Negrescu was treated, and policies of the University.

10.     Dr. Karimbux c/o Counsel/the University.

Dr. Karimbux is expected to have information about Dr. Rogers' investigation and the allegations sent to the EPC. Ms. Negrescu met with Dr. Karimbux prior to her EPC hearing.

11.     Dr. Ghaffari c/o Counsel/the University.

Dr. Ghaffari is expected to have information about Ms. Negrescu's participation in the clinical program and the patients Ms. Negrescu treated, as well as how other disabled and non-disabled students were treated compared to how Ms. Negrescu was treated.

12.     Dr. Yered Mclaughlin c/o Counsel/the University.

Dr. Yered Mclaughlin is expected to have information about Ms. Negrescu's attempts to secure externships and the University's treatment of Ms. Negrescu after the EPC hearing.

3

13.    Dr. Wallach c/o Counsel/the University.

Dr. Wallach is expected to have information about various issues relating to points, including, but not limited to, the bleaching tray and/or occlusal guard procedures performed by Ms. Negrescu. Dr. Wallach also has knowledge related to the allegations against Ms. Negrescu and her EPC hearing.

14.    Dr. Karacosta c/o Counsel/the University.

Dr. Karacosta is expected to have information about Ms. Negrescu's performance and work in the clinical program. Dr. Karacosta also has knowledge related to the allegations against Ms. Negrescu and her EPC hearing.

15.    Ms. Mary Ellen Marks c/o Counsel/the University.

Ms. Marks is an employee of the University and has knowledge of Ms. Negrescu's requests for assistance with her residency program and the difficulty Ms. Negrescu had obtaining information and assistance from the University despite multiple requests made to various representatives of the University, as well as the content of letters sent to residency programs which caused further damage to Ms. Negrescu.

16.    Ms. Sandra Person c/o Counsel/the University.

Ms. Person is an employee of the University in the Finance Department working as the head of Financial Aid/Tuition and is expected to have information about the University's policies and procedures, including, but not limited to, the purported "6 year rule" and graduation requirements. Ms. Person also may have discoverable information relating to Ms. Negrescu's coursework and academic standing.

17.    Dr. Suzuki c/o Counsel/the University.

Dr. Suzuki is expected to have information about Ms. Negrescu's completion of all University requirements for her course of study in Prosthodontics.

18.    Dr. Oligario c/o Counsel/the University.

Dr. Oligario is expected to have information about Ms. Negrescu's clinical work, including, but not limited to, her occlusal guard and/or bleaching tray procedures. Dr. Oligario also has knowledge of Dr. Patel's refusal to work with Ms. Negrescu.

19.    Dr. Patel c/o Counsel/the University.

Dr. Patel is expected to have information about University policies and procedures performed by Ms. Negrescu, including, but not limited to, occlusal guard and/or bleaching tray procedures. Dr. Patel also has knowledge of the other, non-disabled and/or disabled students of hers who performed multiple occlusal guard and/or bleaching tray procedures.  Dr. Patel also has

4

knowledge of her reason(s) for refusing to work with Ms. Negrescu.

20.   Dr. Yunice c/o Counsel/the University.

Dr. Yunice is expected to have information about Ms. Negrescu's performance, her work in the clinical program and Dr. Patel's refusal to work with Ms. Negrescu. Dr. Yunice also has knowledge of applicable University policies and practices, including, but not limited to, those with respect to occlusal guards and/or bleaching trays.

21.   Dr. Burton c/o Counsel/the University.

Dr. Burton worked with Ms. Negrescu and is expected to have information about the occlusal guard and/or bleaching tray procedures she performed.

22.   OCR Attorney Sandy Lin c/o Counsel/the University.

Attorney Lin is expected to have information about Ms. Negrescu's Office for Civil Rights ("OCR") complaints, OCR's investigations, and information produced by the University and/or otherwise discovered during the course of her investigation.

23.   Dr. Ganda, MD c/o Counsel/the University.

Dr. Ganda is expected to have information about Dr. Rogers' treatment of Ms. Negrescu and the investigation conducted by Dr. Rogers and Dr. Ghaffari.

24.   Dr. Falzone c/o Counsel/the University.

Dr. Falzone was a member of the EPC and is expected to have information about Ms. Negrescu's EPC hearing and the consequences stemming therefrom.

25.   Dr. Nandja c/o Counsel/the University.

Dr. Nandja is expected to have information about Ms. Negrescu's return to the clinic following her EPC hearing.

26.   Dr. Karen L. Sarocca, MS, MD (617) 636-5731

Dr. Sarocca has knowledge of Ms. Negrescu's disability(ies) and Ms. Negrescu's requests for reasonable accommodations.

27.   Dr. Sanchez c/o Counsel/the University.

Dr. Sanchez is expected to have information about the reasons for refusing to sign her step card on a prosthodontics denture that she observed Ms. Negrescu complete.

28.   Dr. Irina Dragan c/o Counsel/the University.

Dr. Dragan is expected to have information about her work with Steven Tucker, a non-disabled student who performed approximately 16 occlusal guard and/or bleaching tray procedures and was not disciplined by the University. Dr. Dragan is also expected to have discoverable information about Ms. Negrescu's occlusal guard and/or bleaching tray procedures.

29.   Mr. Steven Tucker (309) 530-4950.

Mr. Tucker is expected to have information about the occlusal guard and/or bleaching tray procedures he performed in his clinical, and that he is not disabled.

30.   Ms. Lauren Smith (614) 315-7315.

Ms. Smith is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Smith also has knowledge of Dr. Rogers' investigation as she was interviewed by Dr. Rogers.

31.   Ms. Julie Nguyen (631) 374-1731.

Ms. Nguyen is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Nguyen also has knowledge of Dr. Rogers' investigation as she was interviewed by Dr. Rogers.  On information and belief she is not disabled.

32.   Ms. Le Truong (857) 277-2920.

Ms. Truong is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Truong also has knowledge of Dr. Rogers' investigation as she was interviewed by Dr. Rogers. On information and belief she is not disabled.

33.   Mr. Mina Youssef (781) 534-2923.

Mr. Youssef is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on him. Mr. Youssef also has knowledge of Dr. Rogers' investigation as he was interviewed by Dr. Rogers. On information and belief he is not disabled.

34.   Ms. Jacqueline Nguy (317) 514-8536.

Ms. Nguy is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Nguy also has knowledge of Dr. Rogers' investigation as she was interviewed by Dr. Rogers. On information and belief she is not disabled.

35.    Ms. Meghana Lanka (469) 500-3666.

Ms. Lanka is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Lanka also has knowledge of the six occlusal guard procedures she personally performed. On information and belief she is not disabled.

36.    Ms. Kanan Talati (404) 704-2647.

Ms. Talati is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. Ms. Talati also has knowledge of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

37.    Mr. Makram Youssef        (contact information unknown).

Mr. Youssef is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on him. On information and belief he is not disabled.

38.    Ms. Melanie Chu (contact information unknown).

Ms. Chu is expected to have information about the occlusal guard and/or bleaching tray procedure(s) Ms. Negrescu performed on her. On information and belief she is not disabled.

39.    Mr. Ganganjot Smith (contact information unknown).

Mr. Smith is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on him. Mr. Smith is also expected to have information about the patient care allegations made against Ms. Negrescu related to the prosthodontics case. On information and belief he is not disabled.

40.    Ms. Amy Hong (contact information unknown).

Ms. Hong is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on her. On information and belief she is not disabled.

41.    Mr. David Michaels (617) 455-7660.

Mr. Michaels is expected to have information about the bleaching tray and/or occlusal guard procedure(s) Ms. Negrescu performed on him. On information and belief he is not disabled.

42.    Ms. Laura Loperz Jaurequi (505) 469-5466.

Ms. Jaurequi is expected to have information about the patient care allegations (relating to the prosthodontics case) against Ms. Negrescu which formed the basis of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

43.    Mr. Tim Jjang Kim (contact information unknown).

Mr. Kim is expected to have information about the patient care allegations (relating to the endodontics case) against Ms. Negrescu which formed the basis of Ms. Negrescu's EPC hearing. Mr. Kim also has knowledge of the EPC investigation since he was interviewed by Dr. Ragalis after the first EPC accusations. On information and belief he is not disabled.

44.    Nadine Bedair (503) 720 -0666

Mrs. Bedair is expected to have information about the patient care allegations (relating to the endodontics case) against Ms. Negrescu which formed the basis of Ms. Negrescu's EPC hearing. Mrs. Bedair also has knowledge of the EPC investigation since she was interviewed by Dr. Ragalis after the first EPC accusations. On information and belief she is not disabled.

45.    Ms. Jackie Klaus (617) 636-3696.

Ms. Klaus is expected to have information about Ms. Negrescu's EPC hearing. Ms. Klaus also has knowledge of the delayed responses from Ms. Negrescu's Practice Coordinators which impacted her abilities to complete her work. On information and belief she is not disabled.

46.    Mr. Tommy Rivera (contact information unknown).

Mr. Rivera is expected to have information about Ms. Negrescu's EPC hearing. Mr. Rivera also has knowledge of the delayed responses from Ms. Negrescu's Practice Coordinators which impacted her abilities to complete her work. On information and belief he is not disabled.

47.    Ms. Sarita (Last Name Unknown) (617) 636-3696.

Sarita works as the Financial Coordinator for Atlantic and is expected to have information about the discount policies applied for students.

48.    Ms. Caitlin Liu (617) 636-3639.

Ms. Liu is expected to have information about the discount policies applied for students in the Back Bay Group.

49.    Ms. Alyx Ortiz (617) 636-3696.

Ms. Ortiz is expected to have information about the discount policies applied for students in the Atlantic Group and the Back Bay Group. Ms. Negrescu spoke with Ms. Ortiz about the discount policies.

50.     Mr. Daniel Chen (301) 335-0239.

Mr. Chen is expected to have information about the number of occlusal guards and/or bleaching tray procedures he performed, which, upon information and belief, is more than two procedures. On information and belief he is not disabled.

51.     Ms. Shivani Saith (269) 217-7983.

Ms. Saith is expected to have information about the number of occlusal guards and/or bleaching tray procedures she performed, which, upon information and belief, is more than two procedures. On information and belief she is not disabled.

52.     Mr. Stanley Ojukwu (360) 513-1276.

Mr. Ojukwu is expected to have information about the number of occlusal guards and/or bleaching tray procedures he performed, which, upon information and belief, is more than two procedures. On information and belief he is not disabled.

53.     Ms. Selassie Kumapley (404) 903-6082.

Ms. Kumapley is expected to have information about the number of occlusal guards and/or bleaching tray procedures she performed, which, upon information and belief, is more than two procedures. On information and belief she is not disabled.

54.     Ms. Elena Cucerov (857) 234-2743.

Ms. Cucerov is expected to have information about Ms. Negrescu's diagnosis, symptoms and the impact her disability(ies) has/have on her life. Ms. Cucerov also has knowledge of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

55.     Ms. Roumiana "Rumi" Kardzhieva (contact information unknown).

Ms. Kardzhieva is expected to have information about Ms. Negrescu's diagnosis, symptoms and the impact her disability(ies) has/have on her life. Ms. Kardzhieva also has knowledge of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

56.     Ms. Zamone Alexandria Sawyer (614) 929-8739.

Ms. Sawyer is expected to have information about Ms. Negrescu's diagnosis, symptoms and the impact her disability(ies) has/have on her life. Ms. Sawyer also has knowledge of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

57.     Ms. Katerina Devalurak (617) 818-4098.

Ms. Devalurak is expected to have information about Ms. Negrescu's diagnosis, symptoms and the impact her disability(ies) has/have on her life. Ms. Devalurak also has knowledge of Ms.

Negrescu's EPC hearing and her OCR Complaints against the University. On information and belief she is not disabled.

58.    Mr. Chris Cesario (401) 323-5623.

Mr. Cesario is expected to have information about Ms. Negrescu's diagnosis, symptoms and the impact her disability(ies) has/have on her life. On information and belief he is not disabled.

59.    Ms. Miechlean Iniom (954) 532-8778.

Ms. Iniom is expected to have information about the three externships she was required to participate in following an EPC hearing. She also has knowledge of the poor treatment she was subjected to by Dr. Kasberg and the University. Ms. Iniom has disabilities which the University is aware of.

60.    Mr. Derrick Tengo (609) 658-3233.

Mr. Tengo is expected to have information about the lack of any University policy governing occlusal guards and/or bleaching tray procedures. Mr. Tengo also has knowledge of the number of occlusal guard and/or bleaching tray procedures he performed, which, upon information and belief, is more than two procedures, as well as the policies of the University requiring approval from the University staff prior to performing any such procedures (including patient transfers), and that there was no policy capping the number of occlusal guard and/or bleaching tray procedures that students could perform. On information and belief he is not disabled.

61.    Ms. Nika D'Angelo (815) 289-7604.

Ms. D'Angelo is expected to have information about the large number of points she was able to earn in a very short amount of time which still enabled her to graduate on time. Ms. D'Angelo also has knowledge of Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

62.    Ms. Isa D'Angelo (815) 289-7615.

Ms. D'Angelo is expected to have information about Ms. Negrescu's EPC hearing. On information and belief she is not disabled.

63.    Ms. Mia Kutner (contact information unknown).

Ms. Kutner is expected to have information regarding the University's response to allegations that Ms. Kutner was cheating and specifically, information relating to the fact that Ms. Kutner was never expelled or required to perform additional externships. On information and belief she is not disabled.

64.   Mr. Ben Smith (413) 896-1182.

Mr. Smith is expected to have information about the lack of any University policy governing occlusal guard and/or bleaching tray procedures. On information and belief he is not disabled.

65.   Sandeep Srivaste (609) 408-3288.

Mr. Srivaste has knowledge of a new occlusal guard policy that the University distributed to students in the D21 class on or about September 6, 2019. On information and belief he is not disabled.

B. **<u>Supporting Evidence</u>**

The following documents are in the Plaintiff's possession, custody, or control and may be used to support her claims against the Defendant, Trustees of Tufts College, except for documents to be used solely for impeachment:

1.   Applicable school policies and/or handbook(s);

2.   OCR documents;

3.   Ms. Negrescu's academic records, including, but not limited to, her transcript and/or information relating to her tuition, enrollment, coursework, credits, points, occlusal guard and/or bleaching tray procedures, patient transfers, graduation requirements, grades, externships, residency, and disciplinary action taken against her;

4.   Information relating to Ms. Negrescu's EPC hearing and the allegations against her;

5.   Information relating to Ms. Negrescu's request(s) for accommodation;

6.   Information relating to Ms. Negrescu's disability(ies) and the impact her disability(ies) has/have on her major life activities;

7.   Email messages between Ms. Negrescu and professors and University employees related to her coursework, request(s) for accommodation, her disability, her points, her EPC hearing and her attempts to secure an externship, and other allegations in the complaint;

8.   Information and communications to the University relating to Ms. Negrescu's diagnosis/disability(ies); and

9.   Communications between Ms. Negrescu and her colleagues regarding the University's policies and treatment of students;

Plaintiff reserves the right to supplement and/or modify this list as further information becomes available through the discovery process.

### C. <u>**Computation of Damages**</u>

1.   Economic Damages totaling approximately $45,400:

    a.   Overpayment of tuition;

    b.   Rent payments from September 2019 – April 2020;

    c.   Transportation to/from externship;

    d.   Living expenses;

    e.   Educational expenses; and

    f.   Travel expenses

2.   Lost Wages and other damages resulting from the University's discriminatory conduct, in excess of $65,000

3.   Emotional Distress damages to be determined by a jury

4.   Punitive damages

    a.   To be determined.

5.   Attorneys' fees and costs

    a.   To be determined

Dated: February 4, 2021                    Respectfully submitted,

                                           Emanuela E. Negrescu

                                           By Her Attorneys,

                                           */s/ Todd J. Bennett*
                                           Todd J. Bennett (BBO# 643185)
                                           *tbennett@bennettandbelfort.com*
                                           Craig D. Levey (BBO# 681531)
                                           *clevey@bennettandbelfort.com*
                                           Jillian M. Guilfoyle (BBO# 693493)
                                           *jguilfoyle@bennettandbelfort.com*
                                           Bennett & Belfort, P.C.
                                           24 Thorndike Street, Suite 300
                                           Cambridge, MA 02141
                                           (617) 577-8800


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 4th day of February, 2021.

                                           */s/ Todd J. Bennett*